FILED
2019 Aug-06 PM 01:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | |
| | ] | |
| v. | ] | 2:19-cr-00042-KOB-JEO-1 |
| | ] | |
| MARK RORY WHITEHEAD, | ] | |
|     Defendant. | ] | |

## MEMORANDUM OPINION

This matter comes before the court on the magistrate judge's report and recommendation that the court deny Defendant Mark Rory Whitehead's motions to suppress all evidence obtained from the search of his residence after his arrest. (Doc. 37). For the following reasons, the court will accept the magistrate judge's report and recommendation and deny the motions to suppress.

**I.    BACKGROUND**

The magistrate judge found the following facts and the court finds these facts supported by the evidence on the record.

Law enforcement officers went to Mr. Whitehead's house to execute an arrest warrant for him; the officers did not have a search warrant. An officer knocked on the front door of the house and Mr. Whitehead responded to the knock. Officer Sanders arrested Mr. Whitehead at the door, handcuffed him, and seated him in a chair on the front porch. Mr. Whitehead was not wearing shoes. He asked the officers to recover his shoes from inside the house and turn off his stove.

1

Officers then conducted a protective security sweep of the house. According to Deputy U.S. Marshal Thomas, standard practice is for arresting officers to conduct a protective security sweep of any areas with direct access to where the officers make the arrest to ensure that no threats to officer safety exist. (*See* Doc. 31 at 42–45). The front bedroom had a window that opened to the porch area where the officers had seated Mr. Whitehead, so Deputy Thomas searched the bedroom as part of the protective sweep. Deputy Thomas observed a weapon in plain view in an open closet area in the bedroom.

The United States charged Mr. Whitehead with illegally possessing a weapon—the shotgun recovered from the bedroom closet—after being convicted of a felony in violation of 18 U.S.C. § 922(g). Mr. Whitehead moved to suppress all evidence seized from his house and all other evidence and statements obtained as a result of the search. According to Mr. Whitehead, the officers violated his Fourth and Fifth Amendment rights when they searched his house without a warrant and without legal justification for the search. After obtaining new counsel, Mr. Whitehead filed a supplemental motion to suppress that incorporated and adopted his first motion to suppress and added a description of the physical layout of his front bedroom.

The magistrate judge held two hearings on the motions to suppress at which Officer Sanders, Deputy Thomas, and Task Force Agent Owens testified.

Following the hearings, the magistrate judge entered his report and recommendation on the motions to suppress in which he found that Deputy Thomas was justified in conducting a protective sweep of the front bedroom where he observed the shotgun under *Maryland v. Buie*, 494 U.S. 325 (1990).

Mr. Whitehead filed objections to the magistrate judge's report and recommendation. (Doc. 38). The court analyzes—and overrules—each of his objections in turn.

## II. DISCUSSION

As the magistrate judge stated, the dispositive question for Mr. Whitehead's motions to suppress is "whether Deputy Thomas was justified in conducting a protective sweep of the bedroom where the weapon was found." (Doc. 37 at 5–6).

A "'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). In *Buie*, the Supreme Court found that arresting officers can make two types of "protective sweeps" of the areas around where they make an arrest. First, the Court held that arresting officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. Second, the Court held, "[b]eyond that, . . . there must be articulable facts which, taken

together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334.

Here, the magistrate judge found that the search of Mr. Whitehead's bedroom satisfied the criteria for the first type of *Buie* search because the bedroom "had line of sight and window access to the front porch area." (Doc. 37 at 7). Mr. Whitehead contends that the magistrate judge also implicitly found that the search fit the second type of *Buie* search. Mr. Whitehead objects to both findings and contends that *Buie* does not justify the search.

Mr. Whitehead first objects to the factual findings in the magistrate judge's report and recommendation as incomplete. Mr. Whitehead contends that the magistrate judge ignored that officers arrested him in daylight while the lights were on in Mr. Whitehead's house, that Officer Sanders could see through the storm door at the front of the house, that Mr. Whitehead opened the storm door, and that officers immediately arrested him at the door, placed him in a chair on the front porch, and did not enter the house for thirty seconds. (Doc. 38 at 2–3). According to Mr. Whitehead, these facts show that officers arrested him "beyond the threshold of the residence" and thus could not search his residence incident to the arrest. (*Id.* at 3). The court disagrees.

Given the 139 pages of transcripts from the two suppression hearings, Mr.

4

Whitehead cannot reasonably expect the report and recommendation to contain every fact that he deems significant. The magistrate judge properly summarized the pertinent facts of this case and the court finds the summary to be sufficient. Also, the court has read the entire transcripts from both hearings. So the court is aware of these—and other—indisputable facts, as well as disputable and indisputable inferences that may be drawn from those facts.

And, in any event, whether officers arrested Mr. Whitehead "beyond the threshold of the residence" holds no legal significance to the issues in this case. Provided that the sweep is otherwise permissible, officers may perform a protective sweep of an arrestee's house regardless of which side of the threshold the arrest occurred. *See United States v. Yeary*, 740 F.3d 569, 580 (11th Cir. 2014) (upholding a protective sweep of a house after the defendant exited the house and was arrested); *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983) ("Law enforcement officers who have lawfully apprehended a suspect on a portion of a structure (here it was an open porch built as a part of the home) which they have reason to believe contains dangerous third persons who might pose a threat to their safety have a right to conduct a reasonable security check of such premises."); *United States v. Norman*, 638 F. App'x 934, 937–38 (11th Cir. 2016) ("[T]he fact that Norman was arrested as she stepped outside the house did not prevent officers from conducting a protective sweep inside the home, provided the sweep was

5

otherwise permissible.").

Next, Mr. Whitehead contends that the front bedroom was too far away from the porch to be a space "immediately adjoining the place of arrest from which an attack could be immediately launched" under *Buie*. (*See* Doc. 38 at 4). The court disagrees.

Whether a space is "immediately adjoining the place of arrest from which an attack could be immediately launched," and thus searchable under *Buie*, depends on the specific circumstances of the arrest and "'the particular configuration of the dwelling'" where the arrest is made. *United States v. Porter*, 2018 WL 4214189, at *7 (M.D. Ala. Aug. 9, 2018) (quoting *United States v. Pruneda*, 518 F.3d 597, 603 (8th Cir. 2008)) (collecting several cases demonstrating the case-by-case analysis of whether a space is "immediately adjoining the place of arrest").

Here, Mr. Whitehead was arrested at his front door and seated on the front porch with law enforcement officers. The front bedroom was adjacent to the porch. (*See* Doc. 30-2; Doc. 30-6; Doc. 31 at 34–35, 38–41). The front bedroom window faced directly out to the porch. (*See* Doc. 30-2; Doc. 30-6; Doc. 31 at 41). And the closed see-through storm door and the open solid front door led to a den immediately accessible by a passageway that led to the front bedroom. (*See* Doc. 30-7; Doc. 30-9; Doc. 30-10; Doc. 31 at 34–35, 38–39). So, the front bedroom had line of sight and window access to the front porch and was "immediately adjoining

the place of arrest from which an attack could be immediately launched." Thus, under *Buie*, Deputy Thomas was justified in conducting a protective sweep of the bedroom from which someone could immediately launch an attack through the window at the officers on the front porch.

Mr. Whitehead relies on three cases to challenge this conclusion: (1) *United States v. Hromada*, 49 F.3d 685 (11th Cir. 1995); (2) *United States v. Sunkett*, 95 F. Supp. 2d 1367 (N.D. Ga. 2000); and (3) *State v. Kruse*, 175 Wis. 2d 89 (Ct. App. 1993). (*See* Doc. 38 at 3–4). These cases are unavailing.

First, *Hromada* involves an analysis different than the pertinent one in this case. There, the Eleventh Circuit analyzed whether officers could search a house to "investigate the officers' reasonable suspicion of danger," not whether officers could conduct a protective sweep of a house for adjoining the place of arrest. *See Hromada*, 49 F.3d at 690.

Next, *Sunkett* supports the constitutionality of the bedroom sweep. In *Sunkett*, the district court found that *Buie* justified the protective sweep of a bedroom "adjacent to the area of the arrest from which an attack could be immediately launched (i.e., from which the scene of the arrest is visible) and in any location in such rooms, including closets, in which an attacker could hide." *Sunkett*, 95 F. Supp. 2d at 1369. Like the room in *Sunkett*, the front bedroom here was adjacent to the area of Mr. Whitehead's arrest, one could see the area of arrest

7

from the bedroom, and one could immediately launch an attack on the arresting officers on the porch from the bedroom.

And the facts of *Kruse*—a case where the search was not justified—are distinguishable from the facts of this case. In *Kruse*, the Wisconsin Court of Appeals found that *Buie* did not justify the search of a "bedroom closet that is separated by a wall and is down the hall and around the corner approximately eighteen feet from the arrest area." *Kruse*, 175 Wis. 2d at 96. But, in this case, the bedroom closet was not so remote to the arrest area; rather, it was in a room immediately adjacent to the arrest area with a window facing the arrest area. The fact that Deputy Thomas had to walk through the den to reach the bedroom does not change the exterior proximity of the bedroom to the porch.

Finally, Mr. Whitehead objects to the magistrate judge's "implicit conclusion" that the search falls under the second type of search permitted by *Buie*; *i.e.*, a search supported by facts that "would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334; (Doc. 38 at 4). According to Mr. Whitehead, the fact that he asked the officers to recover his shoes from inside the house and turn his stove off "do[es] not make it more likely 'that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" (Doc. 38 at 4) (citing *Buie*, 494 U.S. at 334).

8

But Mr. Whitehead misses the point. The magistrate judge did *not* rely on Mr. Whitehead's request concerning his shoes and stove as a fact that "would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334. Rather, the magistrate judge found—and the court agrees—that because Mr. Whitehead requested that the officers enter his house, the officers could conduct security sweeps of the areas adjacent to where they might find his shoes and stove for their own safety. (*See* Doc. 37 at 7–8). Otherwise, the officers would risk being set up or lured into a trap by Mr. Whitehead's request.

## III. CONCLUSION

For the reasons stated above, *Buie* justifies the protective security sweep of the bedroom where officers recovered the shotgun. So, by separate order, the court will **OVERRULE** Mr. Whitehead's objections to the magistrate judge's report and recommendation, **ACCEPT** the report and recommendation, and **DENY** the motions to suppress.

**DONE** and **ORDERED** this 6th day of August, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE